UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA, *ex rel.*
Renee Ifrah,

                            Plaintiff,

      vs.

COMMUNITY HEALTH CENTER OF BUFFALO, INC.,
SANDRA DiPASQUALE,
KATHLEEN DUKE,
ARDELL DOLSON,
MICHAEL IKPEZE,
BARBARA MAJERONI,
SUSAN SCHUTTE,
PATRICIA SMITH,
ALBERT RICHARDSON,
JAMES COUSINS,

                            Defendants.
_____

**DECISION
and
ORDER

05-CV-237A(F)**

APPEARANCES:      IFRAH PLLC
                          Attorneys for Plaintiff
                          A. JEFF IFRAH,
                          DAVID B. DEITCH, of Counsel
                          1717 Pennsylvania Avenue, NW
                          Suite 650
                          Washington, DC   20006

                          WILLIAM J. HOCHUL, JR.
                          UNITED STATES ATTORNEY
                          Attorney for Plaintiff
                          ROBERT G. TRUSIAK,
                          Assistant United States Attorney, of Counsel
                          138 Delaware Avenue
                          Buffalo, New York   14202

                          HODGSON RUSS, LLP
                          Attorneys for Defendants
                          JOSEPH S. BROWN, of Counsel
                          The Guaranty Building
                          140 Pearl Street, Suite 100
                          Buffalo, New York   14202

In this action alleging claims under the False Claims Act and retaliation, Plaintiff, by motion filed January 29, 2012 (Doc. No. 77), moves to compel Defendants, at Defendants' expense, to review numerous (45) back-up magnetic tapes of recorded data, ("the tapes"), which Defendants had previously represented contained no responsive information, particularly relevant emails.  Plaintiff also seeks sanctions and reimbursement of Plaintiff's costs incurred in reviewing the tapes.  Defendants' representation, made during a hearing before the court on Plaintiff's motion to compel conducted October 24, 2011 (Doc. No. 74), was based on the averments of Defendants' information system administrator who had reviewed the tapes in an attempt to comply with Plaintiff's document request.  *See* Declaration of Jesse Jackson ("Jackson") filed September 30, 2011 (Doc. No. 70) (describing his review of the tapes). Defendants supplied the tapes to Plaintiff without asserting timely objections based on privilege or serving a privilege log pursuant to Fed.R.Civ.P. 26 (5)(A)(i) and (ii).  Plaintiff represents that according to a preliminary review of the tapes by its forensic consultant, HLP Integration ("HLP"), the tapes, contrary to Defendants' prior representations, appear to contain records, *i.e.*, computer files, particularly emails, relevant to Plaintiff's claims.  No restriction on Plaintiff's use of the tapes by way of a protective order or stipulation was sought or obtained by Defendants at the time the tapes were provided to Plaintiff. Plaintiff's motion requests Defendants produce all non-privileged, responsive emails and reimburse Plaintiff for the costs, approximately $11,000, incurred by Plaintiff uncovering the alleged falsity of Defendants' prior representation as to the non-existence of any responsive information on the tapes, and sanctions.

On March 5, 2012, Plaintiff filed Supplemental Authority in Support of Realtor's

Request for Sanctions attaching a copy of *Kolon Industries, Inc. v. E.I. DuPont De Nemours and Company*, 2012 WL 66429 (E.D.Va. Feb. 28, 2012) (Doc. No. 84) ("Plaintiff's Supplemental Authority"). On March 19, 2012, Defendants filed Defendants' Reply to Relator's Supplemental Authority in Support of Her Request for Sanctions (Doc. No. 88) ("Defendants' Reply").

At the hearing on Plaintiff's motion, conducted February 29, 2012 (Doc. No. 83), the court declined to order any specific relief on Plaintiff's motion at that time; rather, the court permitted Defendants to elect to meet its obligation to produce any relevant emails, in relation to the tapes arising from Defendants' apparently, according to HLP's findings, mistaken belief that no responsive information resided on the tapes, by either (1) allowing Plaintiff to more fully screen the tapes at Plaintiff's expense with Defendants' assistance to preserve any potential attorney-client privilege which may attach to the emails, (2) conducting such screening by Defendants, at Defendants' expense, or (3) using a sampling technique. By letter dated March 9, 2012, Defendants elected the first option subject to a limitation on the scope of Plaintiff's review of the tapes (Doc. No. 104). By letter dated March 12, 2012 (Doc. No. 105), Plaintiff objects to Defendants' election as beyond the options established by the court based on Defendants' statement that Plaintiff's review shall be subject to restrictions as agreed by the parties. A review of the minute entry for the February 29th hearing indicates under the court's first option, Defendants were not permitted to demand any restrictions on the scope of Plaintiff's review of the tapes. Thus, despite Defendants' failure to assert timely any privilege as to the contents of the tapes, the court accepts Plaintiff's offer as a stipulation to implement a reasonable procedure at Plaintiff's expense for reviewing

the tapes with Defendants' assistance, in order to restrict Plaintiff's access to any potentially privileged material that may remain on the tapes.

Given that Plaintiff's possession of the tapes carried no restriction on the scope of their review by Plaintiff, the court declines to impose any at this time.  However, by the same token, Defendants having forgone their opportunity, as contemplated by Fed.R.Civ.P. 34(a) and (b)(2)(B) and (E)(i), to object to or to attempt to limit the manner of production to Plaintiff of the information purportedly stored on the tapes, Defendants cannot impose any restrictions on Plaintiff's forensic attempts to locate and copy relevant emails that remain on the tapes.  That Defendants were possibly, assuming the accuracy of HLP's review of the tapes, mistaken in their belief as to the existence of any relevant data on the tapes such as emails or as to the accessibility of such data using technical restoration or other methods such as reading the tapes with the aid of specialized software is the apparent result of Defendants' failure to employ more sophisticated software capable of locating emails on the tapes despite the fact that the tapes may have been routinely overwritten by Defendants, a fact which Plaintiff was aware of before employing HLP to conduct a further review of the tapes.

As to Plaintiff's request for reimbursement for its costs necessary to determine whether the tapes contain responsive, and reproducible, information, an analogy to the 'open filing cabinet' manner of document discovery is applicable.  *See* Fed.R.Civ.P. 34(a)(1)(A).  *See also* Steven Baicker, William M. Janssen, John D. Carr, FEDERAL RULES HANDBOOK (2012) (West), at 894 ("The requesting party is responsible for all costs of copying the requested document.") (citing *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 297 (W.D.N.Y. 1996) (plaintiff may copy documents by bringing

his own portable copying machine or by paying defendant a reasonable copying cost). The court is aware, as Plaintiff points out, Doc. No. 82 at 1, it could sanction Defendants pursuant to Fed.R.Civ.P.37 based on Defendants' apparently inaccurate representation regarding the presence of responsive emails stored on the tapes. Significantly, Plaintiff points to nothing in the record to support that Defendants' error, as asserted by Plaintiff, was based on anything but a good-faith, but mistaken, belief without any intent to purposively evade Defendants' discovery obligations.  Defendants' willingness to permit an unlimited inspection of the tapes, while attempting to preserve after the fact any potential confidential attorney-client privilege in any communications remaining on the tapes by Plaintiff, to verify Defendants' belief as to the non-existence of relevant emails on the tapes, supports this conclusion. Plaintiff has, moreover, not incurred any costs associated with any special reformatting or translation software required to retrieve relevant information presently residing on the tapes.

In fact, based on the supplemental information provided by the parties (Doc. Nos. 95 and 97) in response to the court's post-hearing request for detailed information regarding the software utilized by Defendants in reviewing the back-up tapes for any possible emails relevant to Plaintiff's claims (Doc. No. 95) ("Plaintiff's Response") and the software used by Defendants in responding to Plaintiff's production requests (Doc. No. 97) ("Defendants' Response"), the court finds Defendants' computer systems administrator used software that was not capable of thoroughly reading overwritten back-up tapes.  According to Plaintiff, Plaintiff's outside forensic computer services provider, HLP, used Media Merge PC to review the tapes.  Plaintiff's Response, Affidavit of Kevin Albert ("Albert Affidavit") ¶ 14.  On the other hand, Defendants' then

Network Administrator, Jesse Jackson, used a software package called Symantec Backup Exec. Declaration of Joseph S. Brown, Esq. ("Brown Declaration") (Defendants' Response) ¶ 4. Plaintiff's review of the tapes included copying each tape and performing a "forensic scan" of each tape presumably using the Media Merge PC software. Albert Affidavit ¶ 15. As a result of these procedures, HLP determined that the tapes contained electronically stored files for Defendants' CEO, Sandra DiPasquale, created in 2007 as well as other files created prior to 2008. Based on the representation made by Defendants based on Jackson's review of the tapes which indicated that no files created prior to 2008 were present on the tapes, Plaintiff demands reimbursement of the $11,109.34 in costs for copying and scanning the tapes. In making this demand, Plaintiff implies that Defendants' review of the tapes was either intentionally misleading or negligent. This implication is faulty.

Plaintiff was well-aware that because the Complaint, originally filed April 6, 2005, was sealed until December 16, 2009, when the court unsealed the Complaint and it was served on Defendants on January 11, 2010, following the Department of Justice's declining intervention in 2008. Plaintiff was also informed by Defendants, the back-up tapes for the relevant period, 2004 and thereafter, were routinely reused by Defendants and probably overwritten by Defendants, prior to 2010, facts Plaintiff learned from Plaintiff's telephone interview, to which Defendants consented and facilitated, of Jackson on July 26, 2011. Brown Declaration ¶ 6; Declaration of David B. Deitch, Esq. (Doc. No. 95) ¶ 10.

Based on the court's research, specifically the court's IT manager who has nearly 30 years of experience in this field, the answer to this apparent technical

conundrum lies in the difference in the technical capabilities of the respective software used by the parties in their respective attempts to read the tapes to learn whether they contained files relevant to the case, *i.e.*, complete emails or fragments thereof created or received by then key employees of Defendants, including Plaintiff, prior to 2010 and particularly during the period 2004 - 2008.  This time frame is relevant because the federal grant application which Plaintiff alleges contained false representations was filed in 2004 and, according to Jackson, 2008 was the earliest date of any files which he could read on the tapes using the Symantec software.

Specifically, while the Symantec software used by Jackson is capable of storing and reading computer files such as emails to and from backup tapes, if the tapes have been reused and thus rewritten or overwritten, as was the case here, the Symantec software does not permit one seeking to detect and review or 'read' all of the files that may remain on such overwritten backup tape.  This is true because when a back-up tape receives information from a computer storage device, such as a hard drive or server, the Symantec Backup Exec software, used by Defendants to transfer data to a back-up tape, places an electro-magnetically created 'mark' on the back-up tape indicating the End of Tape or EOT.  Thus, when the tape is reused or overwritten, only the amount of back-up tape needed to record the new data or email files is used and a new EOT is noted on the tape potentially leaving other, earlier recorded back-up files, or fragments, unaffected.  Therefore, when using the Symantec tool to read the rewritten tape to determine whether a particular user file, as Jackson did, such as emails created by a particular user, is present, the tool will only 'read' to the last placed EOT 'thinking' it has found all the requested files it was asked to locate even though

earlier placed EOT marks and related files, including emails, may remain on the tape.

On the other hand, HLP, as noted, Plaintiff's forensic consultant, used Media Merge software tool, to conduct its "scan" of the tapes, presumably because HLP was aware, as a commercial forensic consultant with expertise as to such an engagement, that unlike the Symantec software used by Defendants, Media Merge, which is not designed to conduct back-up functions, is a computer software tool used to forensically examine data storage devices such as Defendants' back-up tapes, even if they are overwritten as were the tapes in this case. Significantly, unlike Symantec Backup Exec tool used by Jackson, Media Merge reads through the entire back-up tape, even if rewritten, by ignoring the EOTs previously placed by the Symantec Backup Exec tool on the tape during an earlier back-up procedure, enabling reuse of the tape and subsequent routine back-up, including the most recent EOT placed on the tape by a rewriting during the later backup function. In this way HLP was able, as it reported to Plaintiff's counsel and the court, to "scan" the tapes and, according to HLP, locate some remaining files including possible email fragments created prior to 2008 as Plaintiff now asserts may be relevant to the case.  That HLP is a commercial computer forensic specialist, and Defendant Community Health Center of Buffalo ("CHCB") is a non-for-profit provider of health services to the under and uninsured, may explain why CHCB would not readily have available to it a specialized and expensive software tool like Media Merge, a copy of which the court has learned would, as a proprietary software tool, cost as much as $48,000, plus annual maintenance and upgrade fees, to any user such as HLP to acquire for its professional services business.  Further, it is apparent that at the time Jackson reviewed the tapes, Defendants' previous back-up vendor, PCI,

had returned to Defendants only the tapes themselves and not any back-up history as to the contents of the tapes which were maintained by PCI in either hard-copy or a digital copy of such contents, assuming such information remained available at the time of Defendants' review.  The court also finds it relevant that nowhere in the Albert Affidavit are these critical technical distinctions explained.  This observation is not intended to be critical of Albert or HLP but, rather, to point out why Plaintiff's counsel in filing the instant motion labored under the apparent misapprehension that Jackson's search had failed either by deception or default to conduct a reasonably effective review of the tapes in an effort to locate relevant emails as required of Defendants as requested parties under Fed.R.Civ.P. 34(a).  *See Moll v. Telesector Resources Group, Inc.*, 2010 WL 4642931, at *3 (W.D.N.Y. Nov. 17, 2010) (denying plaintiff's motion to compel based on defendant establishing it had performed a reasonable search for responsive documents).  While it may be that Jackson should have realized he was using the 'wrong' software tool for the job, such lack of technical awareness does support an inference of purposefully avoiding required production.  Jackson was a system manager for a relatively small non-for-profit health services agency with an associate's degree in computer science; HLP is a commercial forensic specialist.  It is self-evident from the Albert Affidavit that HLP was well aware that the Symantec software tool used by Jackson was not capable of thoroughly reading overwritten back-up tapes because, as the court (and Plaintiff's counsel) learned well after Plaintiff's motion was filed, HLP did not use the Symantec software tool to review the tapes; rather, it used an expensive specialized software package, Media Merge, more likely to be utilized by such forensic specialists like HLP.

Plaintiff had an opportunity to interview Jackson as to the procedures he used in reviewing the tapes. If Plaintiff intended, after receiving the tapes for its own review at Plaintiff's expense as the court permitted, to seek to shift the cost of further review of tapes to Defendants, Plaintiff's counsel certainly could have queried HLP about why it was able to discover the existence of remaining files on the tape which HLP has assertedly discovered yet Jackson was unable to do so. Instead, Plaintiff's counsel immediately formed the unsupported conclusion that Jackson's failure to so do represented sanctionable misconduct which the court should attribute to Defendants. Of course, Defendants' counsel made no similar effort. Counsel for both parties were thus equally deficient in their attention to the important technical questions that should have been addressed in connection with Plaintiff's demand for production of the tapes. *See* Conor R. Crowley, Esq., *Duty of Competence in E-Discovery*, U.S. LAW WEEK, June 12, 2012, at 1721, 1722 (Bloomberg BNA) (observing that electronic discovery matters ("ESI") counsel should be familiar "an appreciation of the relevant technology" and citing to Electronic Discovery Program of the Seventh Circuit Court of Appeals adopted in 2009 requiring, *inter alia*, in ESI litigation that counsel who are not competent as to a client's computer system designate an e-discovery liaison who is familiar with "electronic document storage . . . , and relevant information retrieval technology, including search methodology.").

Given all of these factors, the court finds that the purported emails and other files, assuming their existence, remaining on the tapes were not "reasonably accessible because of undue burden or cost" to Defendants. *See* Fed.R.Civ.P. 26(b)(2)(B). Accordingly, Plaintiff's request for reimbursement of Plaintiff's costs to review the tapes

is DENIED.

Plaintiff also contends that the recent decision in *Kolon Industries, Inc.*, 2012 WL 664239, supports Plaintiff's request for an award of sanctions to reimburse Plaintiff for the cost of forensic services which, according to Plaintiff, have detected the presence of relevant emails on the tapes, despite Jackson's averment that he had reviewed the tapes to search for "files" relevant to this case, *i.e.*, emails of Defendant DiPasquale and Plaintiff, a year ago but "found no such files." Doc. No. 70 ¶ ¶ 5-7. According to Jackson, all of the tapes had been routinely "recycled" by Defendants for use as "backup" resulting in the fact that the tapes, to the extent that prior relevant emails had been copied onto the tapes as a backup function, including any emails then residing on the tapes thereafter, "had long been overwritten by the recycling of such tapes." *Id*., ¶ 5.

In *Kolon Industries, Inc.*, plaintiff's attorney represented to the court that certain relevant documents were available for production but this representation turned out to be untrue resulting from counsel's failure to make proper inquiry from third parties who had possession of the documents, a misrepresentation amounting to what the court found under the circumstances was bad faith on counsel's part. *Kolon Industries, Inc.*, 2012 WL 664239, *3. As a result of counsel's bad faith misrepresentation, defendant was prevented from issuing subpoenas for the documents which subsequently were "inadvertently destroyed." *Id.*

Contrary to Plaintiff's contention, *Kolon Industries, Inc.*, is inapposite. Defendants' counsel's representation at the October 24, 2011 hearing that the tapes contained no relevant documents was based on Jackson's, Defendants' then systems

administrator, sworn statement describing his review of the tapes which required obtaining a new hard drive capable of reading the tapes using the Symantec tool as discussed.  Doc. No. 70 ¶ 6.  Two days of time were expended by Jackson in reviewing the tapes albeit using software ineffective for the review.  *Id.* ¶ 6.  To the extent that special software, such as the Media Merge tool used by Plaintiff's forensic services consultant to review the tapes, could conceivably have been employed by Jackson to attempt to reconstruct or read overwritten emails, it may be argued that Jackson's failure to do so constituted technical oversight but Plaintiff points to nothing that indicates the use of such forensic software is routinely employed by computer systems owners such as Defendants in making a review of the kind Jackson engaged in as Plaintiff had requested, or that overwritten emails will always be somehow reconstructed and rendered readable and retrievable as a result.  Nor has Plaintiff demonstrated that Jackson's misjudgment using the Symantec tool constituted gross incompetence.  Moreover, if, as Plaintiff contends, its forensic provider, HLP, has in fact been successful in doing so using a specialized and expensive tool, Plaintiff has suffered no prejudice as the relevant documents have not been, as was the case in *Kolon Industries, Inc.*, lost.  Thus, Defendants' reliance upon Jackson's review of the tape was not in bad faith or negligent and *Kolon Industries, Inc.* provides no basis for Plaintiff's request for sanctions.

   Therefore, the court declines, at this time, to impose sanctions against Defendants, as Plaintiff requests, based on Defendants' failure to employ feasible technical ways to detect the presence on the tapes of relevant data in retrievable form.  Nor does the court find, based on the record, any basis to find Defendants engaged in

spoliation.  As the Complaint was not served until 2010, Defendants had no reason to place a litigation hold on the tapes before that time.  Moreover, although Plaintiff also had filed in 2005 an administrative claim against Defendants alleging employment discrimination that claim was apparently settled before the Complaint was unsealed and served.  Finally, that the tapes actually contain relevant emails, such as admissions, created several years after the subject grant application was filed in 2004 is wholly speculative at this time.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 77) is GRANTED in part, and DENIED in part.  Defendants shall provide, within 10 days, a list of terms, including names, to facilitate Plaintiff's further review, at Plaintiff's expense, of the tapes to enable Plaintiff to avoid exposing privileged material to such review.  The parties are directed to enter into an agreement to facilitate Plaintiff's further review of the tapes pursuant to Fed.R.Evid. 502(a).

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
          LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: August 1, 2012
         Buffalo, New York